UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Connor Jensen, | File No. 24-CV-01174 (JMB/TNL) |
| Plaintiff, | |
| v. | **ORDER** |
| College Town Pizza, Inc., | |
| Defendant. | |

Connor Jensen, self-represented.

Margaret R. Ryan and Kaylyn Stanek, Jackson Lewis P.C., Minneapolis, MN, for Defendant College Town Pizza, Inc.

This matter is before the Court on Defendant College Town Pizza, Inc.'s (College Town) Motion to Dismiss Plaintiff Connor Jensen's Complaint for failure to state a claim. (Doc. No. 12.) For the reasons explained below, the Court grants the motion.

## BACKGROUND

Connor Jensen is a former employee of College Town, doing business as a Domino's Pizza store in New Hope, Minnesota. (Doc. No. 1 [hereinafter, "Compl."] at 6.) Jensen worked as a delivery driver at the New Hope Domino's from approximately 2019 through May 2021. (*Id.* at 6, 8.) Jensen is Native American. (*Id*. at 13.) He sues his former employer for violation of section 1981 of the Civil Rights Act, alleging that he has been the victim of discrimination based on his national origin and race.

1

In his Complaint, Jensen details several incidents at the Domino's store over a nineteen-month period. The first incident regards Jensen's problems with a Caucasian delivery driver, Sean,[1] who Jensen found to be "toxic and very unhealthy for [him] to deal with." (*Id.* at 6.) On at least two occasions in 2019, Jensen informed his district manager, Danielle, about the strained dynamic between himself and Sean, including an incident in which Sean cut him in line and cursed at him. (*Id.* at 7, 8.) When Danielle failed to take effective action, Jensen reported the situation to College Town's human resources department (HR). HR told Danielle that Sean and Jensen should not be scheduled for the same shifts anymore. (*Id.* at 8.) Danielle responded by moving Jensen off of his Wednesday night shift and reducing his hours from 40–50 hours to 33–35 hours per week, which Jensen felt to be a "punish[ment]." (*Id.*) A few months later, despite HR's order, Jensen was inadvertently scheduled on the same shift with Sean. When Jensen complained to Danielle via text message, he was told by Danielle that he should "get over it." (*Id.* at 9.) Jensen filed another report with HR for Danielle's "very unprofessional behavior and putting [him] in potential danger." (*Id.*)

Jensen also details several other incidents regarding Danielle: on one occasion, she failed to report to law enforcement when he received a death threat on the telephone from a customer, and on a different occasion, she called him a "smart*ss" in front of other employees. (*Id.* at 10–11). Lastly, in April 2021, Jensen sought a schedule change by which he would no longer close on Saturdays and Sundays, which Danielle and College

---

[1] Jensen does not include the last names of College Town employees in the Complaint.

2

Town accepted. (*Id*.) However, after two other drivers quit, Danielle scheduled Jensen to close on a weekend. (*Id.* at 12.) When Jensen refused to work this shift, Danielle called Jensen and threatened to fire him and tell others that he harasses women in the workplace if he did not agree to work. (*Id.*) Jensen quit after this call. (*Id*. at 13.)

Jensen brings the present action against College Town. He alleges that he was the victim of a "targeted attack" and ultimately "forced to quit" due to the discriminatory treatment he received. (*Id*.) In his Complaint, Jensen alleges that the incidents detailed above amount to disparate treatment discrimination and/or a hostile work environment based on his race and national origin in violation of section 1981 of the Civil Rights Act. (*Id.*)

## DISCUSSION

College Town now moves to dismiss Jensen's Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that Jensen failed to plead a cognizable claim of discrimination based on national origin or race. (Doc. No. 12.) Because claims of national-origin discrimination are not cognizable under section 1981, and because the Complaint does not allege sufficient facts to establish either disparate treatment or hostile work environment based on race, the Court grants College Town's motion.

Rule 12(b)(6) permits dismissal when a claim is factually implausible or not cognizable under applicable law. *E.g.*, *Couzens v. Donohue*, 854 F.3d 508, 517–18 (8th Cir. 2017). When evaluating dismissal under Rule 12(b)(6), the Court considers whether the complaint's factual allegations state a "claim to relief that is plausible on its face." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v.*

3

*Iqbal*, 556 U.S. 662, 678 (2009)). A pleading has facial plausibility when its factual allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In this analysis, the Court construes the allegations and draws inferences from them in the light most favorable to the plaintiff. *Park Irmat Drug Corp. v. Express Scripts Holding Co.*, 911 F.3d 505, 512 (8th Cir. 2018). However, the Court will not give the plaintiff the benefit of unreasonable inferences, *Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010), and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

Jensen's claims of national-origin- and race-based discrimination both arise under 42 U.S.C. § 1981. Section 1981 guarantees as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). In short, the statute protects "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." *St. Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 613 (1987).

### A. National-Origin-Based Discrimination

College Town first argues that Jensen's national-origin-based discrimination claim is not cognizable under section 1981. (Doc. No. 16 at 6–7.) College Town is correct. The

Eighth Circuit has unequivocally held that "[s]ection 1981 does not authorize discrimination claims based on national origin." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1053 (8th Cir. 2011); *see also Zar v. S.D. Bd. of Exam'rs of Psychs.*, 976 F.2d 459, 467 (8th Cir. 1992) ("This claim of discrimination based upon national origin is insufficient to state a § 1981 claim."). Jensen provides no legal authority to the contrary. The Court dismisses this claim with prejudice.

### B. Race-Based Discrimination

College Town also moves to dismiss Jensen's claim of race-based discrimination. The Complaint appears to reference both disparate-treatment and hostile work environment theories of discrimination, but it does not include a statement explicitly setting forth which theory Jensen pursues. The Court will analyze both.

#### i. *Disparate Treatment*

College Town argues that Jensen has failed to plead sufficient facts to establish a claim of racial discrimination under a disparate-treatment theory. To survive a motion to dismiss under section 1981, "a plaintiff must initially plead and ultimately prove that, but for race, [he] would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020); *see also Cham v. Mayo Clinic*, No. 23-CV-01156 (SRN/DTS) 2024 WL 3760269, at *10 (D. Minn. Aug. 9, 2024) (explaining that, for purposes of section 1981 pleading, a plaintiff must show "discrimination was a 'but-for' cause of their injury" and that "it is insufficient to show that race was merely a potential reason or motivating factor for the adverse action in question"); *Ntamere v. Amerihealth Adm'rs Inc.*, No. 22-CV-02682 (KMM/JFD), 2023

WL 7678018, at *7 (D. Minn. Nov. 14, 2023) ("[Plaintiff] must plead facts plausibly showing unlawful discrimination, not mere speculation of discriminatory intent on the defendants' part, to create a prima facie case under § 1981.").

The Complaint does not contain any factual allegations that tie the negative treatment that Jensen describes to his race. The bulk of Jensen's Complaint regards the conduct of his manager, including that this manager failed to heed his concerns regarding a coworker, failed to follow proper procedure in reporting a customer's threat against him, yelled and cursed at him, and scheduled him during a time that he had requested off. (Compl. at 7–13). While such allegations indicate that Jensen experienced unpleasant interactions or even personally targeted actions, nowhere does the Complaint tie the manager's conduct to Jensen's race. Jensen does not allege, for example, that racialized language was ever used against him, nor does he allege facts to establish that College Town treated Jensen less favorably than a similarly situated Caucasian colleague.[2] Jensen does assert that his manager's behavior was "very racist" (Compl. at 11), but he has declined to supply any facts, incidents, comments, gestures, or otherwise discriminatory behavior to support this conclusion. *Papasan*, 478 U.S. at 286 (providing that courts need not accept

---

[2] In his response brief, Jensen asserts in conclusory fashion that Sean was similarly situated and treated more favorably. (Doc. No. 19 at 3.) However, Jensen's Complaint does not contain factual allegations necessary to support this conclusion. For example, Jensen does not allege that Sean or any other Caucasian employees were free from being yelled or cursed at, that the manager always granted Caucasian employees' time off requests, or that they were spared the disciplinary actions that Jensen received. Moreover, on the one night in which Sean and Jensen were inadvertently scheduled on the same shift, it was Sean, not Jensen, who was ultimately sent home. (Compl. at 9.) Absent more allegations to establish that Sean or other employees were similarly situated, the Complaint fails to plausibly allege a claim for disparate treatment.

unsupported conclusions as fact in a motion to dismiss). Indeed, Jenson does not allege that this manager—or anyone else at College Town—was even aware of his racial identity.

In short, the Complaint includes no factual allegations to support a reasonable inference that race played a role in the unpleasant interactions that Jensen experienced. The Complaint's bare allegations that Jensen is a member of a protected class, and that he was treated poorly at his workplace, are insufficient to establish a claim under section 1981. *See Comcast Corp.*, 589 U.S. at 339; *Cham*, 2024 WL 3760269, at *10; *Ntamere*, 2023 WL 7678018, at *7. Thus, the Court dismisses this claim.

    ii.    **_Hostile Work Environment_**

College Town also argues that Jensen has failed to plead sufficient facts to establish a claim of racial discrimination under a hostile-work-environment theory. The Court finds that Jensen's claim of hostile work environment fails for the same reason that the disparate-treatment theory fails. As with any claim under section 1981, the plaintiff must link the conduct in question to their race. *Comcast*, 589 U.S. at 339. At the minimum, to establish a prima facie case of hostile work environment, Jensen must allege facts to establish that a "causal nexus" existed between the harassment and his protected group status. *See Yang*, 79 F.4th at 965. As discussed supra, Jensen does not plead any facts tying the alleged negative conduct to his race. His claim must be dismissed accordingly. *Kpou v. Supervalu, Inc.*, 556 F. Supp. 3d 940, 956–57 (D. Minn. 2021).

Even if Jensen had pleaded enough facts to link the untoward workplace conduct to his race, the conduct, as alleged, is not of the degree required to establish a hostile work environment claim. For purposes of section 1981 claims, a hostile workplace is one

7

"permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Watson v. CEVA Logistics U.S., Inc.*, 619 F.3d 936, 942 (8th Cir. 2010).[3] This is a high bar, and many unpleasant work environments will fail to meet it. *See Paskert v. Kemna-ASA Auto Plaza, Inc.*, 950 F.3d 535, 538 (8th Cir. 2020) ("Eighth Circuit precedent sets a high bar for conduct to be sufficiently severe or pervasive in order to trigger a [hostile workplace violation]."); *Watson v. Heartland Health Lab'ys, Inc.*, 790 F.3d 856, 862 (8th Cir. 2015) (summarizing Eighth Circuit precedent and concluding that, to qualify as a hostile work environment, the conduct must "poison [plaintiff's] work environment or permeate it with intimidation, ridicule, and insult").

Sufficiently "severe and pervasive conduct" involves a work environment replete with daily or steady acts of racial hostility. *See, e.g.*, *Kpou v. Supervalu, Inc.*, 556 F. Supp. 3d 940, 960 (D. Minn. 2021) (finding hostile work environment where plaintiff was subject to daily, racially charged "comments and threats from coworkers" over six-year period); *CEVA Logistics*, 619 F.3d at 940–941, 944 (tallying numerous incidents over at least four-year period including white coworkers refusing to work with Black coworkers, a confederate flag hanging in the workplace, KKK graffiti in the workplace, and numerous incidents of racial slurs); *Ross v. Douglas Cnty., Neb.*, 234 F.3d 391, 397 (8th Cir. 2000) (finding plausible hostile work environment where manager "constantly referred to

---

[3] Hostile work environment claims under section 1981 and Title VII are analyzed under an identical standard. *See Watson*, 619 F.3d at 941; *Eliserio v. United Steelworkers of Am. Loc. 310*, 398 F.3d 1071, 1076 (8th Cir. 2005).

[plaintiff] by a racial epithet"); *Delph v. Dr. Pepper Bottling Co.*, 130 F.3d 349, 352, 356–57 (8th Cir. 1997) (finding hostile work environment where plaintiff was subjected to "a steady barrage of racial name-calling" at workplace).

Conversely, occasional offensive conduct—even highly offensive conduct—is not sufficiently severe or pervasive to establish a cause of action. *See Yang v. Robert Half Int'l, Inc.*, 79 F.4th 949, 965 (8th Cir. 2023) (concluding that series of comments allegedly calling plaintiff a derogatory name were not "severe, physically threatening, or humiliating" enough to constitute hostile work environment); *Heartland Health*, 790 F.3d at 862–63 (8th Cir. 2015) (concluding that "highly offensive" conduct of patient in workplace, "including a sexual touching, a single racial slur, four sexually degrading slurs, and a threat" did not rise to the level of actionable hostile work environment harassment); *LeGrand v. Area Res. for Cmty. & Hum. Servs.*, 394 F.3d 1098, 1103 (8th Cir. 2005) (holding that "three isolated incidents, which occurred over a nine-month period, were not so severe or pervasive as to poison [plaintiff's] work environment"). These cases reveal that "conduct well beyond the bounds of respectful and appropriate behavior" may nevertheless be insufficient to constitute an actionable section 1981 claim. *Paskert*, 950 F.3d at 538.

In this case, Jensen alleges that the following five incidents occurred over a nineteen-month period: (1) a coworker cut his place in line and told him to "f*ck off," resulting in a conflict for which Jensen ultimately had his hours reduced following a directive from HR; (2) a manager called him a "smart*ss" when he complained about another coworker's violation of store policy; (3) Jensen was mistakenly placed on a shift

9

one evening with someone whom HR ordered him to be separated from, and they worked for about an hour until management sent the other individual home; (4) a manager failed to report a customer's threat against Jensen to the police; and (5) a manager threatened to fire Jensen and possibly file a fraudulent complaint against him if he did not work the shift that he had been scheduled to work. (Compl. at 7–12). These incidents may plausibly describe an unpleasant or unprofessional work environment, but they do not reach the level of severity or pervasiveness required for a hostile work environment claim under 42 U.S.C. § 1981. Therefore, the Court dismisses Jensen's hostile work environment claim.

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Defendant College Town Pizza Inc.'s Motion to Dismiss (Doc. No. 12) is GRANTED;

2. Plaintiff Connor Jensen's claim of discrimination based on national origin is DISMISSED WITH PREJUDICE; and

3. Plaintiff Connor Jensen's claim of discrimination based on race is DISMISSED WITHOUT PREJUDICE.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: November 22, 2024        /s/ *Jeffrey M. Bryan*
                                Judge Jeffrey M. Bryan
                                United States District Court